**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| CITY OF SAN ANTONIO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| UNITED STATES DEPARTMENT OF HOMELAND | § | |
| SECURITY; CHAD F. WOLF, *in his official capacity* | § | |
| *as Acting Secretary of the United States Department of* | § | CIVIL ACTION NO  5:20-cv-505 |
| *Homeland Security*; CHAD MIZELLE, *in his official* | § | |
| *capacity as Senior Official Performing the Duties of the* | § | |
| *General Counsel for the United States Department of* | § | COMPLAINT FOR DECLARATORY AND |
| *Homeland Security*; WARREN R. KAUFMAN, *in his* | § | INJUNCTIVE RELIEF |
| *official capacity as Representative and Delegate of the* | § | |
| *Office of the General Counsel for the United States* | § | |
| *Department of Homeland Security*; UNITED STATES | § | |
| IMMIGRATION AND CUSTOMS ENFORCEMENT; | § | |
| MATTHEW T. ALBENCE *in his official capacity as* | § | |
| *Deputy Director and Senior Official Performing the* | § | |
| *Duties of the Director of United States Immigration and* | § | |
| *Customs Enforcement*; and UNITED STATES OF | § | |
| AMERICA, | § | |
| | § | |
| Defendants. | | |

## INTRODUCTION

1.     The Attorney General of Texas (the "**Texas AG**") seeks millions of dollars in penalties from the City of San Antonio ("**San Antonio**") in a state-court lawsuit based on Texas Senate Bill 4, a state law intended to ban "sanctuary cities" (the "**Underlying Lawsuit**").[1] Senate Bill 4 generally predicates liability on a local entity's interference with the enforcement of immigration law. In the Underlying Lawsuit, the Texas AG alleges that San Antonio prohibited the enforcement of federal immigration law by certain employees of the United States Department

---

[1] Senate Bill 4 is codified at Texas Government Code, Title 7, Chapter 752, Subchapter C, Sections 752.051 *et seq.* ("**Senate Bill 4**" or "**SB4**").

of Homeland Security ("**DHS**") and United States Immigration and Customs Enforcement ("**ICE**," together with DHS, the "**Department**"). The Texas AG further alleges that certain of San Antonio's policies prohibit or materially limit the enforcement of federal immigration law. The Texas AG's allegations are baseless. In addition, San Antonio is not a "sanctuary city."

2.      As a result of the structure of SB4 and the nature of the Texas AG's allegations, the Department and certain Department employees are uniquely situated to provide critical evidence regarding the merits of the Underlying Lawsuit. The Texas AG obtained information from the Department, including testimony from Department employees, as part of his efforts to gather information to investigate the Underlying Lawsuit. That testimony forms the cornerstone of the Texas AG's claims against San Antonio. The Department does not dispute that it cooperated with and provided information to the Texas AG, including testimony from its employees. Nevertheless, the Department has arbitrarily denied San Antonio access to its information and employees.

3.      San Antonio requested the disclosure of relevant, non-privileged information from the Department pursuant to its *Touhy* regulations (the "**Requests**").[2] Defendants denied San Antonio's Requests without offering a satisfactory explanation for their decision (the "**Final Decision**").

4.      This action arises out of Defendants' across-the-board refusal to comply with San Antonio's Requests. The requested information is critical to San Antonio's defense in the Underlying Lawsuit and is available only from the Department, such that the Final Decision works to San Antonio's severe disadvantage and harm. The Final Decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the Administrative Procedure

---

[2] *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467–68 (1951). The Department's *Touhy* regulations are codified at 6 C.F.R. § 5.41 *et seq*. The Department purports that its *Touhy* regulations are authorized by the "housekeeping statute," now codified at 5 U.S.C. § 301 (the "**Housekeeping Statute**").

Act. *See* 5 U.S.C. § 706(2). San Antonio therefore seeks declaratory and injunctive relief to ensure that Defendants comply with the Requests by providing the information sought in the Requests.

## I.      JURISDICTION AND VENUE

5.      This action is brought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (the "**APA**"). This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702.

6.      This Court has the authority to grant the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and 5 U.S.C. § 706.

7.      Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §§ 1391(b) and (e)(1), because Defendants are the United States, United States agencies, or officers sued in their official capacities and San Antonio is a resident of this judicial district, and because a substantial part of the events or omissions giving rise to this action occurred and are continuing to occur in this judicial district.

## II.      PARTIES

8.      Plaintiff the City of San Antonio is a municipal body politic and home rule municipality in Bexar County, Texas. San Antonio, Tex., Charter art. 1, § 1. San Antonio derives its powers through the Charter of San Antonio, Texas. San Antonio has the power to sue "in all courts." *Id.* at art. 1, § 3. San Antonio is named as a defendant in the Underlying Lawsuit.

9.      San Antonio is adversely affected and aggrieved by the Final Decision and has standing to bring this action. The Final Decision deprives San Antonio of non-privileged, non-cumulative information from the Department for which San Antonio has exceptional need in the Underlying Lawsuit, in which the Texas AG seeks millions of dollars in civil penalties from San Antonio.

10.     Defendant United States Department of Homeland Security is a cabinet agency within the executive branch of the United States government, and is an agency within the meaning of 5 U.S.C. § 522(f). San Antonio's Requests include requests for information in the custody, control, and/or possession of DHS, and/or information that was acquired by DHS employees while such individuals were employed by or served on behalf of DHS.

11.     Defendant Chad F. Wolf is Acting Secretary of DHS and is sued in his official capacity.

12.     Defendant Chad Mizelle is the Senior Official Performing the Duties of the General Counsel for DHS (the "**OGC**") and is sued in his official capacity.

13.     Defendant Warren R. Kaufman is Assistant Chief Counsel in the Office of the Professional Legal Advisor to the Department and is sued in his official capacity as the "representati[ve]" of the Department under 6 C.F.R. § 5.43 and the "delegate[]" of the OGC under 6 C.F.R. § 5.44 with respect to San Antonio's Requests. "Department employees may only produce, disclose, release, comment upon, or testify concerning those matters which were specified in writing and properly approved by the appropriate Department official designated in § 5.44." 6 C.F.R. § 5.45.

14.     Defendant United States Immigration and Customs Enforcement is an agency of DHS and is an agency within the meaning of 5 U.S.C. § 522(f). San Antonio's Requests include requests for information in the custody, control, and/or possession of ICE, and/or information that was acquired by ICE employees while they were employed by or served on behalf of ICE.

15.     Defendant Matthew T. Albence is the Deputy Director and Senior Official Performing the Duties of the Director of ICE and is sued in his official capacity.

16.     Defendant United States of America is sued as allowed by 5 U.S.C. § 702.

### III.    ALLEGATIONS

17.    "Reasoned decisionmaking under the Administrative Procedure Act calls for an explanation for agency action." *Dep't of Commerce v. New York*, 588 U.S. ___, 139 S.Ct. 2551, 2576 (2019). Nevertheless, Defendants have failed to provide a satisfactory explanation for their blanket refusal to comply with San Antonio's Requests. Defendants have not articulated a rational connection between record facts and the Final Decision. The record does not support—and does not even match—the conclusory explanation Defendants gave for the Final Decision.

**A.    In the Underlying Lawsuit, the Texas AG Alleges that San Antonio Prohibited the Enforcement of Federal Immigration Law by Employees of the Department.**

18.    The Underlying Lawsuit is Cause No. D-1-GN-18-007133, *Ken Paxton, in his official capacity as Attorney General of Texas v. William McManus, et al.*, in the 345th District Court of Travis County, Texas. The Texas AG's live petition is attached as **Exhibit A–1** (the "**Petition**"). The live answer filed by San Antonio is attached as **Exhibit A–2** (the "**Answer**").

19.    The Underlying Lawsuit involves a public controversy between state and municipal entities that implicates issues of public interest core to the "primary mission [of the Department] to promote homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade and immigration."[3]

20.    In the Underlying Lawsuit, the Texas AG claims that: (i) San Antonio violated SB4 by "prohibiting the enforcement of immigration laws" by ICE and ICE Homeland Security Investigations ("**HSI**") on December 23, 2017, *see* Exhibit A–1 (Petition) at ¶¶ 89-92, and by "prohibit[ing] [San Antonio Police Department ("**SAPD**")] officers from assisting or cooperating with ICE, HSI, and HSI Special Agent Brian Johnson [("**Johnson**")] in the enforcement of federal

---

[3] "History," United States Immigration and Customs Enforcement, OFFICIAL WEBSITE OF THE DEPARTMENT OF HOMELAND SECURITY, *available at* https://www.ice.gov/history (last visited Apr. 21, 2020).

immigration laws" on December 23, 2017, *see id.* at ¶¶ 93-96; and (ii) San Antonio violated SB4 by adopting or enforcing a policy that prohibits or materially limits "the enforcement of federal immigration laws," *see id.* at ¶¶ 97-101. The Texas AG seeks millions of dollars in civil penalties, plus attorney's fees and court costs. *Id.* at ¶¶ 106-116.[4]

21.     Specifically, the Texas AG alleges that on December 23, 2017, HSI deployed Johnson to the scene of a suspicious tractor-trailer carrying twelve individuals in San Antonio, Texas (the "**December 23, 2017 Incident**"). *Id.* at ¶ 5.[5] The Texas AG further alleges that "HSI . . . asked to take custody of the [twelve individuals]," *id.* at ¶ 43, that Johnson interacted with SAPD Chief William McManus ("**McManus**") and other SAPD personnel on his way to the scene, at the scene, and later at SAPD headquarters, *id.* at ¶¶ 47-73, and that Johnson made "multiple requests" of SAPD and Chief McManus to "cooperate with HSI and . . . to transport the [individuals] to HSI"—requests that were, according to the Texas AG's allegations, "repeatedly and deliberately refused," *id.* at ¶¶ 74 & 79; *see also id.* at ¶¶ 91-92 (alleging "repeated requests from [ICE and HSI] to take [the twelve individuals] into custody").

22.     The Texas AG further alleges that San Antonio "enforced a policy of prohibiting and materially limiting HSI from enforcing federal immigration laws and prohibited and materially limited [SAPD] officers from cooperating with ICE to enforce federal immigration laws." *Id.* at ¶ 10. In addition, the Texas AG alleges that "it is SAPD's policy to effectively prohibit SAPD officers from cooperating with federal immigration authorities." *See id.* at ¶ 85.

---

[4] During the events in question on December 23, 2017, key portions of SB4 were enjoined from implementation by an Order of this Court and therefore could not be enforced. *See City of El Cenizo v. State*, 264 F. Supp. 3d 744, 812–13 (W.D. Tex. 2017) (Garcia, C.J.) (setting forth injunction). Accordingly, on July 2, 2019, the court in the Underlying Lawsuit granted San Antonio's Partial Motion for Traditional Summary Judgment and dismissed the Texas AG's claims to the extent they relied on the phrase "materially limits" as used in SB4 and were based on conduct occurring between September 1, 2017 and March 13, 2018, including alleged conduct occurring on December 23, 2017.

[5] The Texas AG also alleges that Johnson responded to the scene at the request of ICE Enforcement and Removal Operations ("**ERO**"). *Id.* at ¶ 47.

23.     Finally, the Texas AG alleges that "SAPD developed a Communication Protocol for Human Smuggling or Trafficking Incidents . . . [a]s a result of . . . the December 23, 2017 [I]ncident," which involves or implicates the Department. *See id.* at ¶ 88. That Communication Protocol (the "**Communication Protocol**") was developed after the December 23, 2017 Incident as part of a joint effort among SAPD and HSI Special Agent in Charge Shane Folden ("**Folden**").

**B.     San Antonio has Exceptional Need for Testimony from Johnson and Folden in the Underlying Lawsuit.**

24.     San Antonio maintains that the Texas AG's claims are baseless. San Antonio is not a "sanctuary city," as the Texas AG uses that term, *see* Exhibit A–1 (Petition) at ¶¶ 1-3. San Antonio did not prohibit the enforcement of federal immigration law on December 23, 2017. And San Antonio does not enforce a policy that prohibits or materially limits the enforcement of federal immigration law. This holds true for San Antonio's interaction with Johnson in connection with the December 23, 2017 Incident. San Antonio has exceptional need for testimony from Johnson and Folden in its defense in the Underlying Lawsuit.

**1.     San Antonio has Exceptional Need for Testimony from Johnson Regarding the December 23, 2017 Incident.**

25.     Johnson's alleged actions are a fundamental part of the Texas AG's allegations in the Underlying Lawsuit. *See* ¶¶ 20-21 *supra*. The Texas AG uses Johnson's name more than forty times in the Petition. By way of example, the Texas AG alleges that "despite repeated requests, [Chief] McManus refused to allow HSI Special Agent Johnson to speak to, investigate, or transport the suspected aliens to HSI for processing." Exhibit A–1 (Petition) at ¶ 8. The Texas AG also alleges that Johnson "told [an unnamed SAPD] officer to contact ERO before releasing the suspected aliens because ERO was ready to process them. SAPD declined this request." *Id.* at ¶ 63. The Texas AG further alleges that "[o]n December 23, 2017, the City and [Chief] McManus prohibited SAPD officers from assisting or cooperating with ICE, HSI and HSI Special Agent

Johnson in the enforcement of federal immigration laws." *Id.* at ¶ 95. Thus, a key issue in the Underlying Litigation is whether Johnson sought to enforce federal immigration law on December 23, 2017 and, if so, whether San Antonio prohibited Johnson's enforcement of federal immigration law.

26.     On information and belief, in February 2018 Johnson completed a report regarding the December 27, 2017 Incident. San Antonio obtained a heavily redacted version of that report, a copy of which is attached as **Exhibit E** (the "**Johnson Report**").

27.     On information and belief, the Texas AG based its allegations in the Petition, in part, on the Johnson Report.

28.     Only Johnson has personal knowledge about what he knew, understood, intended, and believed during his interactions with SAPD as to the Texas AG's allegations that San Antonio prohibited the Department from enforcing federal immigration law in connection with the December 23, 2017 Incident. Johnson's testimony cannot be obtained from any other witness. Thus, Johnson's testimony would not be cumulative.

29.     San Antonio has exceptional need to question Johnson regarding the December 23, 2017 Incident in its defense in the Underlying Lawsuit.

30.     Johnson has retired and is no longer employed by the Department.

**2.     San Antonio has Exceptional Need for Testimony from Folden Regarding the Communication Protocol.**

31.     Following the December 23, 2017 Incident, San Antonio and the Department—specifically, Folden—jointly developed the Communication Protocol. A copy of the Communication Protocol is attached as **Exhibit A–3**.

32.     Folden participated in the development and review of the Communication Protocol, which was approved by him or by other members of HSI and/or the Department. In addition,

8

Folden and other members of HSI and/or the Department have interacted with SAPD on an ongoing basis with respect to the Department's enforcement of federal immigration law.

33.     In the Petition, the Texas AG alleges that "[p]art of that Protocol requires Chief McManus's office to notify Catholic Charities and the immigration law firm of any smuggling or trafficking incident so that these agencies can provide translation services, aid, and legal services to suspected felons (suspected illegal aliens)." Exhibit A–1 (Petition) at ¶ 88. The Texas AG further alleges that San Antonio's alleged policy "of contacting Catholic Charities any time they encounter a smuggling or trafficking scene where suspected aliens are present and contacting immigration counsel to represent the suspected aliens at the scene" "prohibits and materially limits the enforcement of immigration laws" in violation of SB4.  *Id.* at ¶ 100.

34.     In the Petition, the Texas AG mischaracterizes the contents of the Communication Protocol and implies that the Communication Protocol was developed solely by SAPD. *See* Exhibit A–1 (Petition) at ¶ 88.

35.     Folden is uniquely positioned to testify regarding the Texas AG's allegations with respect to the Communication Protocol. Only Folden has personal knowledge about what he knew, understood, intended, and believed in reviewing and approving the Communication Protocol—including whether he, in fact, approved the Communication Protocol—and regarding ongoing interactions between the Department and SAPD with respect to the Department's enforcement of federal immigration law. Such testimony cannot be obtained from any other witness. Thus, Folden's testimony would not be cumulative.

36.     San Antonio has exceptional need for testimony from Folden regarding the Communication Protocol in its defense in the Underlying Lawsuit.

**C.    The Department Interjected Itself into the Controversy of the Underlying Lawsuit by Providing Information to the Texas AG that Forms the Foundation of the Texas AG's Allegations Against San Antonio.**

37.    The Department has cooperated with and provided information to the Texas AG regarding the December 23, 2017 Incident.

38.    On June 4, 2018, Johnson provided oral testimony regarding the December 23, 2017 Incident to the Texas AG during a private, in-person interview with Cristina Moreno, an attorney in the General Litigation Division of the Texas AG's Office. San Antonio has obtained a "draft" copy of Moreno's notes regarding Johnson's testimony, which is attached as **Exhibit F** (the "**Texas AG's Notes**" regarding the "**Johnson Testimony**").

39.    On the same day, June 4, 2018, HSI Assistant Special Agent-in-Charge Craig Larabee ("**Larabee**") also provided oral testimony regarding the December 23, 2017 Incident to the Texas AG during a private, in-person interview with Moreno. San Antonio has obtained a "draft" copy of Moreno's notes regarding Larabee's testimony, which is attached as **Exhibit G** (the "**Texas AG's Notes**" regarding the "**Larabee Testimony**").

40.    The Texas AG did not notify San Antonio that it was obtaining the Johnson Testimony or the Larabee Testimony.

41.    The Department did not notify San Antonio that it was cooperating with the Texas AG in providing the Johnson Testimony and the Larabee Testimony.

42.    The Texas AG's Notes regarding the Johnson Testimony, which track the Johnson Report in part but not in full, are fundamental to the Texas AG's allegations in its Petition. As portrayed by the Texas AG, Johnson functions as a critical witness in support of the Texas AG's claims against San Antonio. *See generally* Exhibit A–1 (Petition) at ¶¶ 43, 47-74, & 79-81.  *See also* ¶¶ 20-21, 25 *supra*.

43.     Defendants do not deny that the Department already provided the Texas AG with information relating to the Underlying Lawsuit, including the Johnson Testimony and the Larabee Testimony.

44.     Yet the Department has never provided San Antonio with any information relating to the Underlying Lawsuit, and it has steadfastly refused to make Johnson available to San Antonio.

**D.      San Antonio Requested Information from the Department Pursuant to the Department's *Touhy* Regulations, and Defendants Refused to Comply with the Requests without Articulating a Satisfactory Explanation.**

45.     On July 30, 2019, San Antonio issued the Requests. Copies of the Requests and  the six exhibits referenced and contained therein are attached as **Exhibits A**, **A–1**, **A–2**, **A–3**, **A–4**, **A–5**, and **A–6**, respectively (collectively, the "**Requests**").

46.     On September 11, 2019, Defendants issued their first refusal to comply with the Requests (the "**First Agency Decision**"). A copy of the First Agency Decision is attached as **Exhibit B**.

47.     On September 17, 2019, San Antonio provided Defendants with an opportunity to reconsider the First Agency Decision by way of a detailed request for reconsideration (the "**Request for Reconsideration**"). A copy of the Request for Reconsideration is attached as **Exhibit C**.

48.     On October 11, 2019, Defendants issued their Final Decision to refuse to comply with the Requests, which incorporated the First Agency Decision by reference. A copy of the Final Decision is attached as **Exhibit D**.

1.    **San Antonio Issued the Requests Pursuant to and in Compliance with the Department's *Touhy* Regulations.**

49.    In accordance with 6 C.F.R. § 5.45(a), the Requests "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought" from the Department by San Antonio. *See* Exhibit A (Requests) at 1-3 ("Specific Nature and Relevance of Official Information Sought").

50.    Specifically, San Antonio provided a detailed overview of the Underlying Lawsuit and explained that: (i) the Underlying Lawsuit "arises out of and involves the performance of official activities of current or former employees of the Department," *id.* at 3; (ii) "[t]he Texas AG's allegations in the [Underlying] Lawsuit implicate the core mission of DHS and the 'primary mission [of ICE] to promote homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade, and immigration,'" *id.* (citation omitted); (iii) "the [Underlying] Lawsuit implicates the public interest in the enforcement of federal laws governing immigration, the conduct of local law enforcement, and the interaction between federal law enforcement officials and local law enforcement officials," *id.*; (iv) "[c]onversely, the [Underlying] Lawsuit does not involve a private controversy or purpose," as it "involves no private litigants whatsoever," because "[t]he parties in the [Underlying] Lawsuit are a state's attorney general (in his official capacity only), a city within that state, and the city's public officials (in their official capacities only)," *id.*; and, thus, (v) "[t]he allegations at issue in the [Underlying] Lawsuit are of a public nature only," *id.*

51.    The Requests further specified that: (i) San Antonio did "not purport that the Requests impose[d] any obligation beyond those imposed in the case of like requests under the Federal Rules of Civil Procedure," *id.*; (ii) San Antonio did "not purport that the Requests [sought]—and the Requests [did] not seek—any of the following things: (a) information properly

classified in the interest of national security; (b) revelation of confidential commercial or financial information or trade secrets without the owner's consent; (c) revelation of the internal deliberative processes of the Executive Branch; or (d) information that would potentially impede or prejudice an ongoing law enforcement investigation," *id.*; and (iii) San Antonio "offer[ed] to reimburse the Department for any documented, reasonable, and necessary expenses or fees actually incurred in responding to the Requests," *id*.

52.     The Requests sought four specific categories of information: (i) admissions (the "**Requests for Admission**"); (ii) interrogatories (the "**Interrogatories**"); (iii) production of documents (the "**Requests for Production**"); and (iv) depositions of Johnson and Folden (the "**Request to Depose Johnson**" and the "**Request to Depose Folden**," respectively).

53.     With respect to the Requests for Admission, Interrogatories, and Requests for Production, San Antonio "provide[d] a description using the types of identifying information suggested in [6 C.F.R.] § 5.3(b)," as recommended by 6 C.F.R. § 5.45. *See* Exhibit A (Requests) at 3-5. By way of example, Request for Admission A.1 asked the Department to "admit that ICE Policy Number 10074.2 ('Issuance of Immigration Detainers by ICE Immigration Officers') is the official policy of ICE with respect to the issuance of civil immigration detainers to local law enforcement agencies." *Id.* at 3. To "enable [Department] personnel to locate [the requested information] with a reasonable amount of effort," *see* 6 C.F.R. § 5.3(b), San Antonio attached the underlying document, ICE Policy Number 10074.2, as Exhibit 4 to the Requests. *Id.* at 3 n.4.

54.     With respect to the Request to Depose Johnson, San Antonio explained that: (i) "[i]n the Petition, Johnson functions as the star witness in support of the Texas AG's claims against San Antonio," *id.* at 6; (ii) "Johnson is uniquely positioned to testify regarding the core allegations in the Texas AG's Petition," *id.*; (iii) "San Antonio lacks any information regarding

Johnson's knowledge and perception of facts, including facts regarding the December 23, 2017 Incident," *id.*; (iv) such "information [is] critical to [] San Antonio's defense of the [Underlying] Lawsuit," *id.*; (v) "Johnson's [deposition] testimony would not be cumulative" because, "[t]o the extent Johnson's testimony aligns with the Texas AG's portrayal of Johnson's knowledge and perception of facts regarding the December 23, 2017 Incident, that testimony would conflict with (rather than duplicate) the anticipated testimony of [] San Antonio witnesses," *id.*; and (vi) "[i]n light of Johnson's cooperation with the Texas AG to the exclusion of [] San Antonio . . . authorizing the deposition of Johnson would serve the Department's need [if any] to maintain impartiality between the public litigants at issue in the [Underlying] Lawsuit," *id.*

55.     San Antonio requested 2.5 hours (150 minutes) in which to depose Johnson regarding a narrow set of topics—namely, "Johnson's involvement in the December 23, 2017 Incident (with relevant events spanning from approximately noon to approximately 5:00 pm on December 23, 2017), including: Johnson's interactions and communications with employees or representatives of San Antonio (including but not limited to SAPD personnel) while on his way to the scene, at the scene, and at SAPD headquarters; and Johnson's interactions and communications with the Texas AG relating to the December 23, 2017 Incident and/or in connection with the Lawsuit." *Id.* at 6-7. The Requests specified that, "[b]ecause these topics cover interactions and communications between Johnson and third parties outside the Department that occurred in the past (primarily, almost two years ago), they do not implicate privilege, confidentiality, national security, trade secret, internal deliberative process, or ongoing law enforcement investigation concerns." *See id.* at 7.

56.     San Antonio further "offer[ed] to accommodate the Department's interest in conserving its resources" by deposing "Johnson at any location convenient to Johnson and the

14

Department, including but not limited to San Antonio (Johnson's place of residence and the location of the nearest Office of Chief Counsel and ICE Field Office), Austin (the location of counsel for all litigants in the [Underlying] Lawsuit), Washington D.C. (the location of DHS Headquarters), or any other location of the Department's choosing." *Id.* San Antonio also reiterated its "offer[] to reimburse the Department for any documented, reasonable, and necessary expenses or fees actually incurred in connection with the deposition of Johnson." *Id.*

57.    With respect to the Request to Depose Folden, San Antonio explained that: (i) "[i]n the Petition, the Texas AG claims that the policies of San Antonio are grounds for millions of dollars in civil penalties under SB4 and expressly refers to the 'Communication Protocol' to support its claims," *id.*; (ii) "part of the [Underlying] Lawsuit turns on the development of the Communication Protocol following the December 23, 2017 Incident, as well as the ongoing interactions between the Department (including Folden) and SAPD with respect to the Department's enforcement of federal immigration law," *id.*; (iii) "Folden's involvement in the development of the Communication Protocol—including, importantly, his review and/or approval thereof—is critical to San Antonio's defense of the [Underlying Lawsuit]," *id.*; (iv) "Folden is uniquely positioned to testify regarding the Texas AG's allegations with respect to the Communication Protocol and to ongoing interactions between the Department (including Folden) and SAPD with respect to the Department's enforcement of federal immigration law," *id.* at 7-8; (v) "San Antonio lacks any information regarding Folden's knowledge and perception of facts regarding these issues and interactions," *id.* at 8; and (vi) "Folden's testimony would not be cumulative," because "[n]o [] San Antonio witness can testify to Folden's review and/or approval of the Communication Protocol or to Folden's views regarding ongoing interactions between the

Department and SAPD with respect to the Department's enforcement of federal immigration law," *id*.

58.     San Antonio requested 2.5 hours (150 minutes) in which to depose Folden regarding a narrow set of topics—namely, "Folden's involvement in the development of the Communication Protocol, including Folden's review and/or approval of the Communication Protocol; and [o]ngoing interactions between the Department (including Folden) and SAPD with respect to the enforcement of federal immigration law." *Id.* The Requests specified that, "[b]ecause these topics cover interactions and communications between Folden and/or the Department and third parties outside the Department, they do not implicate privilege, confidentiality, national security, trade secret, internal deliberative process, or ongoing law enforcement investigation concerns." *See id.*

59.     San Antonio further "offer[ed] to accommodate the Department's interest in conserving its resources" by deposing "Folden at any location convenient to Folden and the Department, including but not limited to San Antonio (Folden's place of residence and the location of the nearest Office of Chief Counsel and ICE Field Office), Austin (the location of counsel for all litigants in the [Underlying] Lawsuit), Washington D.C. (the location of DHS Headquarters), or any other location of the Department's choosing." *Id.* San Antonio again reiterated its "offer[] to reimburse the Department for any documented, reasonable, and necessary expenses or fees actually incurred in connection with the deposition of Folden." *Id.*

### 2.     In the First Agency Decision, Defendants Refused to Comply with the Requests and Failed to Articulate a Satisfactory Explanation.

60.     In the First Agency Decision, Defendants stated that "[t]he Government [would] not comply with the [Requests]," for several purported reasons. *See* Exhibit B (First Agency Decision) at 2. But Defendants failed to articulate a satisfactory explanation that included a rational

16

connection between record facts and their decision to refuse to comply. Rather, Defendants' purported reasons are unsupported and even contradicted by the record.

61.     Defendants first provided a page-long, general overview of the Department's *Touhy* regulations that does not address any of the Requests specifically. *See id.* at 1-2. Beyond providing that general overview, Defendants raised four categories of purported reasons for their refusal to comply with the Requests: (i) reasons for the Department's refusal to comply with the Requests generally; (ii) reasons for the Department's refusal to comply with the Requests for Admission, the Interrogatories, and the Requests for Production; (iii) reasons for the Department's refusal to comply with the Request to Depose Johnson; and (iv) reasons for the Department's refusal to comply with the Request to Depose Folden. *See id.* at 2.

> **a.     Defendants' Purported Reasons for Refusing to Comply Generally with the Requests Run Counter to the Record and the Department's *Touhy* Regulations.**

62.     Defendants stated that the Requests were generally "not sufficient to meet [the *Touhy*] requirements." Exhibit B (First Agency Decision) at 2. Then, quoting 6 C.F.R. § 5.45, Defendants implied that the Requests did not "set forth in writing and with as much specificity as possible, the nature and relevance of the official information sought." *Id.* Defendants cited two cases for the proposition that "[t]he *Touhy* regulations are an absolute condition precedent to obtaining testimony or other information from [the Department], and the regulations must be complied with before [the Department] may respond to any such request." *Id.* (citing *United States v. Soriano-Jarquin*, 492 F.3d 495 (4th Cir. 2007), and *Ho v. United States*, 374 F. Supp. 2d 82 (D.D.C. 2005)).

63.     But unlike the cases cited by Defendants, in which the requesting parties "made no attempt whatsoever to comply with the DHS regulations," *see Soriano-Jarquin*, 492 F.3d at 504, San Antonio issued the Requests both pursuant to and in compliance with the Department's *Touhy*

regulations. *See, e.g.*, Exhibit A (Requests) at 1 (stating that the Requests were issued "[p]ursuant to 6 C.F.R. § 5.41 *et seq.*"); *see generally id.* at 1–8 (providing specific written explanation of "the nature and relevance of the official information sought" in compliance with 6 C.F.R. § 5.45).

64.     To be clear, "*Touhy* regulations are only procedural, and do not create a substantive entitlement to withhold information." *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 62 (1st Cir. 2007).

65.     Defendants' purported reasons in the First Agency Decision for refusing to comply generally with the Requests are thus contradicted by the record and the Department's own *Touhy* regulations, and they are also not in accordance with law.

>     **b.     Defendants' Purported Reasons for Refusing to Comply with the Requests for Admission, the Interrogatories, and the Requests for Production Run Counter to the Record and the Department's *Touhy* Regulations.**

66.     Defendants stated that the Department "will not comply with the [Requests for Admission, the Interrogatories, and the Requests for Production]" for two reasons, neither of which provides a satisfactory explanation: (i) the Requests "comingle[d] requests for ***admissions*** and ***interrogatories*** with requests for ***documents***, ***records*** and ***testimony***, and additionally reference[d] solicited answers to the former in requested responses to the latter," Exhibit B (First Agency Decision) at 2 (emphases in original); and (ii) "admissions and interrogatories are statements and writings between parties to litigation, and the United States is not a party to Subject [sic] litigation." *id*.

67.     As an initial matter, Defendants' reasons have no basis in, or even a connection to, the eight enumerated "considerations" in the Department's *Touhy* regulations. *See* 6 C.F.R. § 5.48(a).

68.     Defendants' reasons also run counter to those same *Touhy* regulations, which authorize both the OGC and Defendant Kaufman, as legal counsel for the Department, to "receive and accept . . . requests directed to the Secretary, the Department, or any component thereof, or its employees, whether civil or criminal in nature, for: (1) Material, including **documents**, contained in the files of the Department; [and] (2) Information, including **testimony**, affidavits, declarations, **admissions**, **responses to interrogatories**, or informal statements, relating to material contained in the files of the Department or which any Department employee acquired in the course and scope of the performance of his official duties." 6 C.F.R. § 5.43(a) (emphasis added). With respect to Defendants' second reason (that the United States is not a party to the Underlying Lawsuit), *Touhy* regulations "apply only when the United States is not a party to the litigation." *In re Scully*, 2006 WL 1523231, at *1 (D.D.C. Apr. 11, 2006). Thus, section 5.43(a) authorizes Defendant Kaufman and the OGC to "receive and accept" the Requests **because** the Department is not a party to the Lawsuit.

69.     Defendants offered no further explanation for refusing to comply with the Requests for Admission, the Interrogatories, or the Requests for Production.

70.     Defendants' reasons in the First Agency Decision for refusing to comply with the Requests for Admission, Interrogatories, and Requests for Production are thus contradicted by the record and the Department's own *Touhy* regulations, and they are not in accordance with law.

        **c.**    **Defendants' Purported Reasons for Refusing to Comply with the Request to Depose Johnson Run Counter to the Record, the Department's *Touhy* Regulations, and Federal Law.**

71.     Defendants stated that the Department "will not comply with the [Request to Depose Johnson]" for two reasons, both of which are conclusory assertions with no rational connection to record facts: (i) "the deposition . . . would require DHS to expend time and resources

for private purposes, rather than the conduct of agency business," Exhibit B (First Agency Decision) at 2; and (ii) "the deposition . . . would be unduly burdensome," *id*.[6]

72.     As to the first reason, Defendants conceded that "Johnson is retired and no longer employed by the DHS," Exhibit B (First Agency Decision) at 2, meaning that authorizing the deposition of Johnson could not implicate "[t]he need to conserve the time of Department employees for the conduct of official business," *see* 6 C.F.R. § 5.48(a)(4), in the first place.

73.     In addition, because Johnson is retired and no longer employed by the Department, Defendants' interpretation of the Department's *Touhy* regulations to permit the Department to prohibit the deposition of a former employee is invalid and exceeds the scope of the Department's authority to "prescribe regulations for . . . the conduct of its employees" under the Housekeeping Statute, codified at 5 U.S.C. § 301. The term "employee," as used in section 301, refers only to current employees and does not include former employees.

74.     Defendants' unsupported assertion that any deposition of Johnson "would require DHS to expend time and resources for private purposes" is belied by the fact that the Underlying Lawsuit involves a ***public*** controversy between ***public*** litigants that implicates issues of ***public*** interest core to the primary mission of the Department and its "agency business." Defendants also ignored the "public interest in having public employees cooperate in the truth seeking process by providing testimony useful in litigation," *Davis Enterprises v. U.S. E.P.A.*, 877 F.2d 1181, 1188 (3d Cir. 1989), and ignored that San Antonio offered to reimburse the Department for expenses or fees incurred in connection with the deposition.

75.     As to the second reason, Defendants articulated no facts to explain their blanket assertion that any deposition of Johnson "would be unduly burdensome," especially in light of the

---

[6] As to the Request to Depose Johnson, Defendants raised no argument under the six "factors" listed at 6 C.F.R. § 5.48(b), because the Request to Depose Johnson did not implicate any of those factors.

fact that Johnson is retired and no longer employed by the Department. Defendants failed to address the fact that San Antonio offered to eliminate any undue burden—if any burden at all— by (i) limiting its request to a 2.5-hour deposition regarding a narrow set of topics; (ii) offering to depose Johnson at any location convenient to Johnson and the Department; and (iii) offering to reimburse the Department for expenses or fees incurred in connection with the deposition.

76.     Further, Defendants neither acknowledged nor accounted for the reality that the Department already cooperated with and provided information to the Texas AG in connection with the Underlying Lawsuit. *See* Exhibit F (Texas AG's Notes regarding the Johnson Testimony) and Exhibit G (Texas AG's Notes regarding the Larabee Testimony). Defendants offered no basis for their arbitrary and capricious decision to abandon impartiality between the public litigants at issue in the Underlying Lawsuit.

77.     Finally, Defendants suggested that "any deposition of retired [Johnson] would not produce relevant information or lead to the discovery of admissible evidence and would be duplicative of information in [the possession of San Antonio and the Texas AG]." Exhibit B (First Agency Decision) at 2. While this suggestion bears no connection to the "considerations" enumerated in 6 C.F.R. § 5.48, it is nonetheless also contradicted by the record. Johnson is uniquely positioned to testify regarding the Texas AG's allegations with respect to the December 23, 2017 Incident. Only Johnson has personal knowledge about what he knew, understood, intended, and believed during his interactions with SAPD as related to the Texas AG's allegations that San Antonio prohibited the Department from enforcing federal immigration law as related to the December 23, 2017 Incident. In addition, only Johnson has personal knowledge about the statements he made in the Johnson Report.  Such testimony cannot be obtained from any other witness.  Accordingly, Johnson's testimony would not be cumulative.

78.     Defendants' reasons in the First Agency Decision for refusing to comply with the Request to Depose Johnson are thus contradicted by the record and the Department's own *Touhy* regulations, and they are not in accordance with law.

>           **d.      Defendants' Purported Reasons for Refusing to Comply with the Request to Depose Folden Run Counter to the Record and the Department's *Touhy* Regulations.**

79.     Defendants stated that the Department "will not comply with the [Request to Depose Folden]" for three reasons, all of which are conclusory assertions with no rational connection to record facts: (i) "Folden has a heavy workload" and the deposition would therefore "impede his to [sic] ability to fulfill his duties, which would have an adverse impact on the agency's mission and duties," Exhibit B (First Agency Decision) at 2; (ii) "the deposition . . . would require DHS to expend time and resources for private purposes, rather than the conduct of agency business," *id.*; and (iii) "the deposition . . . could also potentially reveal internal deliberative processes, privileged information, including . . . law enforcement sensitive information and attorney-client communications, and information protected from disclosure by the Privacy Act" and other unspecified "federal laws and regulations," *id.*[7]

80.     As to the first reason, Defendants articulated no facts to explain their blanket assertion that "Folden has a heavy workload" such that a 2.5-hour deposition "would impede his ability to fulfill his duties." Defendants failed to address the fact that San Antonio offered to accommodate Folden's workload and his duties by (i) limiting its request to a 2.5-hour deposition regarding a narrow set of topics; and (ii) offering to depose Folden at any location convenient to Folden and the Department.

---

[7] Unlike their refusal to comply with the Request to Depose Johnson, Defendants did not assert that the requested deposition of Folden would be "unduly burdensome."

81.     As to the second reason, Defendants articulated no facts to explain their blanket assertion that the any deposition of Folden "would require DHS to expend time and resources for private purposes."  That assertion is belied by the fact that the Underlying Lawsuit involves a **public** controversy between **public** litigants that implicates issues of **public** interest core to the primary mission of the Department and its "agency business." Defendants also ignored the "public interest in having public employees cooperate in the truth seeking process by providing testimony useful in litigation," *Davis Enters.*, 877 F.2d at 1188, and ignored that San Antonio offered to reimburse the Department for expenses or fees incurred in connection with the deposition.

82.     As to the third reason, Defendants articulated no facts to explain their blanket and unspecific assertion that any deposition of Folden "***could* . . . *potentially*** reveal internal deliberative processes, privileged information, including . . . law enforcement sensitive information and attorney-client communications, and information protected from disclosure by the Privacy Act" and other unspecified "federal laws and regulations." *See* Exhibit B (First Agency Decision) at 2 (emphasis added). As an initial matter, this reason has no footing in the Department's *Touhy* regulations, which provide that compliance with a *Touhy* request "will not ordinarily be authorized" where the Department articulates a satisfactory explanation that "[c]ompliance **would reveal** internal deliberative processes," "[c]ompliance **would violate** a statute or a rule of procedure," or "[c]ompliance **would violate** a ***specific*** regulation or Executive order." *See* 6 C.F.R. § 5.48(b) (emphases added). Defendants' vague, indefinite, and unspecific reason does not articulate such an explanation. But even so, Defendants also ignore the fact that the topics on which San Antonio requests to depose Folden cover interactions and communications between Folden and/or the Department and third parties outside the Department, and therefore they do not

implicate privilege, confidentiality, national security, trade secret, internal deliberative process, or ongoing law enforcement investigation concerns.

83.     Finally, as with their refusal of the Request to Depose Johnson, Defendants also suggested that "any deposition of [Folden] would not produce relevant information or lead to the discovery of admissible evidence and would be duplicative of information in [the possession of San Antonio and the Texas AG]." Exhibit B (First Agency Decision) at 2. Again, while this suggestion bears no connection to the "considerations" enumerated in 6 C.F.R. § 5.48, it is nonetheless also contradicted by the record. Folden is uniquely positioned to testify regarding the Texas AG's allegations with respect to the Communication Protocol. Only Folden has personal knowledge about what he knew, understood, intended, and believed in reviewing and approving the Communication Protocol—including whether he, in fact, approved the Communication Protocol—and regarding ongoing interactions between the Department and SAPD with respect to the Department's enforcement of federal immigration law. Such testimony cannot be obtained from any other witness. Accordingly, Folden's testimony would not be cumulative.

84.     Defendants' reasons in the First Agency Decision for refusing to comply with the Request to Depose Folden are thus contradicted by the record and the Department's own *Touhy* regulations, and they are not in accordance with law.

### 3.     San Antonio Asked Defendants to Reconsider the First Agency Decision.

85.     In the Request for Reconsideration (Exhibit C), San Antonio provided a thorough and detailed response to the First Agency Decision and afforded Defendants an opportunity to reconsider their refusal to comply with the Requests and their failure to provide a satisfactory explanation that articulated a rational connection between record facts and that decision.

86.     San Antonio emphasized that "'agencies entrusted with preserving [national] security [like the Department] should take great pains to make rational use of their limited

resources' and thus the Department 'must explain and justify [its] actions in order to permit meaningful checks on executive power.'" *See* Exhibit C (Request for Reconsideration) at 3 (quoting *Santillan v. Gonzales*, 388 F. Supp. 2d 1065, 1080 (N.D. Cal. 2005)).

87.     For precision, San Antonio further stated its understanding "that the Department [] decided to not comply with the following portions of the Requests: A.1, A.2, A.3, A.4, A.5, B.1, B.2, B.3, B.4, C.1, C.2, C.3, C.4, C.5, C.6, D, and E," and requested that Defendants clarify the record "to the extent the Department [had] instead finally decided to comply with the Requests." *See id.* at 6.

88.     San Antonio also notified Defendants that their "decision carrie[d] significant consequences for [] San Antonio," because "[i]t deprive[d] San Antonio of non-privileged, non-cumulative information from the Department for which [] San Antonio has exceptional need in the [Underlying] Lawsuit." *Id.*

### 4.    In the Final Decision, Defendants Incorporated the Reasons Given in the First Agency Decision and Reiterated Their Refusal to Comply with the Requests Without Articulating a Satisfactory Explanation.

89.     In response to the Request for Reconsideration, Defendants issued the Final Decision, in which Defendants reiterated their refusal to comply with the Requests and stated, "This is the final agency decision on [the Requests]." Exhibit D (Final Decision) at 2. Defendants "incorporate[d] . . . by reference" the reasons given in the First Agency Decision and also gave five additional reasons for their refusal to comply. *See id.* at 1-2. Yet again, Defendants' additional reasons failed to articulate a satisfactory explanation that includes a rational connection between record facts and their decision to refuse to comply. Like the reasons in the First Agency Decision, the reasons in the Final Decision are unsupported and contradicted by the record.

90.     As an initial matter, all of Defendants' additional reasons flow from their misleading prefatory assertion that the Department had not provided information "to either party

*since the filing of the [Underlying Lawsuit]*." *See id.* at 1 (emphasis added). Of course, Defendants do not dispute—and cannot dispute—that the Department interjected itself into the controversy prior to the filing of the Underlying Lawsuit by providing information to the Texas AG, including the Johnson Testimony, as part of the Texas AG's efforts to investigate the Underlying Lawsuit. *See* Exhibit F (Texas AG's notes regarding the Johnson Testimony) and Exhibit G (Texas AG's Notes regarding the Larabee Testimony). But the Department seemingly sought to evade that reality by omitting its prior cooperation with the Texas AG from the narrative.

91.     Moreover, Defendants' additional reasons were devoid of any individualized factual analysis regarding any particular Request. Instead, the additional reasons dealt only in vague generalities, offering conclusory assertions with no articulation of a rational connection to record facts, and with no argument pertaining to any individual Request.

92.     Turning to the five specific additional reasons in the Final Decision, Defendants gave the following conclusory assertions with no rational connection to record facts: (i) the Department "does not wish to jeopardize its relationship with either party . . . by inserting itself in [the Underlying Lawsuit]," Exhibit D (Final Decision) at 1; (ii) the Department's "involvement would unnecessarily implicate [it] in contentious issues not related to its mission," *id.*; (iii) "[t]o do so would not be in the public interest," *id.*; (iv) the Department's "involvement may include adverse effects on the performance . . . of [the Department's] mission and duties," *id.*; and (v) "[t]he federal government also has an interest in maintaining impartiality between the parties, as there is not a substantial government interest at stake," *id.* at 1-2.

a.   **Defendants' First Additional Reason Runs Counter to the Record and the Department's *Touhy* Regulations.**

93.   First, Defendants stated that the Department refused to comply generally with the Requests because the Department "does not wish to jeopardize its relationship with either party . . . by inserting itself in [the Underlying Lawsuit]." *Id.* at 1.

94.   To be clear, Defendants did not invoke or track section 5.48(b)(6) of the Department's *Touhy* regulations, which provides that "compliance will not ordinarily be authorized" where it would "impede or prejudice an on-going law enforcement investigation."[8] Neither did Defendants attempt to articulate a substantive argument under section 5.48(b)(6). Defendants did not identify any "on-going law enforcement investigation," and Defendants did not draw a rational connection between record facts and any assertion that such an "on-going law enforcement investigation" would be impeded or prejudiced by the Department's compliance with any of the Requests. That is because section 5.48(b)(6) does not apply. In any event, the Department has waived any purported justification under section 5.48(b)(6).

95.   Yet even if Defendants **had** raised an argument under section 5.48(b)(6) that the Department's compliance would "jeopardize" an unspecified "on-going law enforcement investigation" with San Antonio, such argument would necessarily flow from Defendants' flawed presupposition that the Department had not already interjected itself into the controversy of the Underlying Lawsuit by providing information to the Texas AG. Defendants cannot justify their refusal to comply with the Requests on the basis that the Department should not "insert[] itself" into the Underlying Litigation when the Department already inserted itself into the Underlying Litigation by cooperating with and providing information to the Texas AG. *See* Exhibit F (Texas

---

[8] Rather, Defendants cited only "6 C.F.R. § 5.48(a)" at the end of the single paragraph comprising the substance of the Final Decision. Exhibit D (Final Decision) at 2. Section 5.48(a) is distinct from section 5.48(b), and section 5.48(a) does not contain section 5.48(b)(6).

AG's Notes regarding the Johnson Testimony) and Exhibit G (Texas AG's Notes regarding the Larabee Testimony).

96.     Defendants' first additional reason otherwise bears no connection to the Department's *Touhy* regulations. None of the *Touhy* regulations even remotely authorizes the Department's refusal to comply with a request on the basis that the Department "does not wish to jeopardize its relationship" with the parties at issue. *See generally* 6 C.F.R. § 5.48.

97.     Defendants' first additional reason in the Final Decision for refusing to comply generally with the Requests is thus contradicted by the record and the Department's own *Touhy* regulations, and it is not in accordance with law.

> **b.     Defendants' Second Additional Reason Runs Counter to the Record and the Department's *Touhy* Regulations.**

98.     Second, Defendants stated that the Department refused to comply generally with the Requests because the Department's "involvement [in the Underlying Litigation] would unnecessarily implicate [the Department] in contentious issues not related to its mission." Exhibit D (Final Decision) at 1.

99.     Yet again, this argument necessarily flows from Defendants' flawed presupposition that the Department had not already interjected itself into the controversy of the Underlying Lawsuit by providing information to the Texas AG. Again, Defendants cannot justify their refusal to comply with the Requests on the basis that the Department should not become "involve[d]" in the Underlying Litigation when the Department already interjected itself into the Underlying Litigation by cooperating with and providing information to the Texas AG. *See* Exhibit F (Texas AG's Notes regarding the Johnson Testimony) and Exhibit G (Texas AG's Notes regarding the Larabee Testimony).

4847-3524-3434

100. Moreover, Defendants failed to address the fact that the Underlying Lawsuit implicates the "primary mission [of the Department] to promote homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade and immigration."[9]

101. Defendants' second additional reason in the Final Decision for refusing to comply generally with the Requests is thus contradicted by the record and the Department's own *Touhy* regulations, and it is not in accordance with law.

      **c.    Defendants' Third Additional Reason Runs Counter to the Record and the Department's *Touhy* Regulations.**

102. Third, Defendants stated, in full, that the Department refused to comply generally with the Requests because "[t]o do so would not be in the public interest." Exhibit D (Final Decision) at 1.

103. This third additional reason is the epitome of a conclusory assertion. Defendants do not even advance a theory of connection—much less a ***rational*** one—between their assertion and record facts.

104. Moreover, Defendants again failed to address the fact that the Underlying Lawsuit involves a public controversy between public litigants that implicates issues of public interest core to the primary mission of the Department. Defendants also ignored the "public interest in having public employees cooperate in the truth seeking process by providing testimony useful in litigation." *Davis Enters.*, 877 F.2d at 1188.

---

[9] "History," United States Immigration and Customs Enforcement, OFFICIAL WEBSITE OF THE DEPARTMENT OF HOMELAND SECURITY, *available at* https://www.ice.gov/history (last visited Apr. 21, 2020).

105.     Defendants' third additional reason in the Final Decision for refusing to comply generally with the Requests is thus contradicted by the record and the Department's own *Touhy* regulations, and it is not in accordance with law.

###### d.     Defendants' Fourth Additional Reason Runs Counter to the Record and the Department's *Touhy* Regulations.

106.     Fourth, Defendants stated that the Department refused to comply generally with the Requests because the Department's "involvement may include adverse effects on the performance . . . of [the Department's] mission and duties." Exhibit D (Final Decision) at 1.

107.     This fourth additional reason is yet another conclusory assertion with no rational connection to record facts. Yet again, this argument necessarily flows from Defendants' flawed presupposition that the Department did not already interject itself into the controversy of the Underlying Lawsuit by providing information to the Texas AG. And again, Defendants cannot justify their refusal to comply with the Requests on the basis that the Department should not become "involve[d]" in the Underlying Litigation when the Department already interjected itself into the Underlying Litigation by cooperating with and providing information to the Texas AG. *See* Exhibit F (Texas AG's Notes regarding the Johnson Testimony) and Exhibit G (Texas AG's Notes regarding the Larabee Testimony).

108.     Defendants' fourth additional reason in the Final Decision for refusing to comply generally with the Requests is thus contradicted by the record and the Department's own *Touhy* regulations, and it is also not in accordance with law.

###### e.     Defendants' Fifth Additional Reason Runs Counter to the Record and the Department's *Touhy* Regulations.

109.     Fifth, Defendants stated that the Department refused to comply generally with the Requests because "[t]he federal government also has an interest in maintaining impartiality

between the parties, as there is not a substantial federal government interest at stake." Exhibit D (Final Decision) at 1-2.

110.    Yet again, and most blatant of all, this argument necessarily flows from Defendants' flawed presupposition that the Department had not already interjected itself into the controversy of the Underlying Lawsuit by providing information to the Texas AG. And again, Defendants cannot justify their refusal to comply with the Requests on the basis that the Department desires to "maintain[] impartiality" when the Department already abandoned impartiality by interjecting itself into the Underlying Litigation through cooperating with and providing information to the Texas AG. *See* Exhibit F (Texas AG's Notes regarding the Johnson Testimony) and Exhibit G (Texas AG's Notes regarding the Larabee Testimony).

111.    Defendants neither acknowledged nor accounted for this reality in their fifth additional reason, and Defendants offered no basis for their arbitrary and capricious decision to abandon impartiality as between the Texas AG and San Antonio.

112.    To the extent Defendants purport to rely on section 5.45(a)(6), which provides as a "consideration . . . [t]he need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated," Defendants' unsupported assertion is further belied by the fact that the Underlying Lawsuit involves only ***public*** litigants—and no private litigants whatsoever.

113.    Moreover, Defendants' unsupported assertion that "there is not a substantial federal government interest at stake" is further at odds with the fact that the Underlying Lawsuit implicates the federal government's substantial interest in the "primary mission [of the Department] to

promote homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade and immigration."[10]

114. Defendants' fifth additional reason in the Final Decision for refusing to comply generally with the Requests is thus contradicted by the record and the Department's own *Touhy* regulations, and it is not in accordance with law.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Administrative Procedure Act – Exceeds Statutory Authority)**

115. Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

116. Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory . . . authority." 5 U.S.C. § 706(2)(C).

117. The Department's *Touhy* regulations are codified at 6 C.F.R. 5.41 *et seq.*

118. Defendants may only exercise authority conferred by statute. *See City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297–98 (2013).

119. The Department purports to derive its authority to promulgate *Touhy* regulations from the Housekeeping Statute, codified at 5 U.S.C. § 301. Under section 301, the Department "may prescribe regulations for . . . the conduct of its employees."

120. In section 301, Congress directly spoke to the precise question of whether an agency is authorized to promulgate regulations for the conduct of former employees, as opposed to current employees. The term "employee" contemplates someone who currently works, or is currently employed by the Department, not someone who has retired from employment. Congress

---

[10] "History," United States Immigration and Customs Enforcement, OFFICIAL WEBSITE OF THE DEPARTMENT OF HOMELAND SECURITY, *available at* https://www.ice.gov/history (last visited Apr. 21, 2020).

thus made its intent clear: Section 301 unambiguously does not authorize the Department to prescribe regulations for the conduct of its former employees.

121.    Both the Department and this Court must give effect to the unambiguously expressed intent of Congress in section 301. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

122.    Johnson is a retired former employee—not a current employee—of the Department.

123.    In connection with their refusal to comply with the Request to Depose Johnson, Defendants' interpretation of the Department's *Touhy* regulations to permit the Department to prohibit the deposition of a former employee is invalid and exceeds the scope of the Department's authority to "prescribe regulations for . . . the conduct of its employees" under 5 U.S.C. § 301.

124.    The Final Decision is therefore "in excess of statutory . . . authority" in violation of the APA. 5 U.S.C. § 706(2)(C).

125.    Defendants' violation causes ongoing harm to Plaintiff.

## SECOND CLAIM FOR RELIEF

### (Administrative Procedure Act – Arbitrary and Capricious)

126.    Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

127.    Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

128.    The Final Decision is arbitrary and capricious because Defendants' justification for their across-the-board refusal to comply with the Requests runs counter to the evidence before the

Department, relies on factors Defendants are not authorized to consider, and disregards material facts and evidence.

129.    The Final Decision is also arbitrary and capricious because Defendants failed to reasonably justify their refusal to comply with any individual Request, as the Final Decision is devoid of any individualized factual analysis regarding any particular Request, and the Final Decision offers only generalized conclusory assertions with no articulation of a rational connection to record facts.

130.    The Final Decision is also arbitrary and capricious because it is pretextual. While Defendants purported to give reasons for their across-the-board refusal to comply with the Requests, the Final Decision offers only conclusory assertions that bear no rational connection to the facts and evidence.

131.    The Final Decision is therefore "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA. 5 U.S.C. § 706(2)(A).

132.    Defendants' violation causes ongoing harm to Plaintiff.

### THIRD CLAIM FOR RELIEF

### (Administrative Procedure Act – Exceeds Statutory Authority)

133.    Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

134.    Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory . . . authority." 5 U.S.C. § 706(2)(C).

135.    The Department's *Touhy* regulations are codified at 6 C.F.R. 5.41 *et seq.*

136.    Defendants may only exercise authority conferred by statute. *See City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297–98 (2013).

34

137.    The Department purports to derive its authority to promulgate *Touhy* regulations from the Housekeeping Statute, codified at 5 U.S.C. § 301. "[Section 301] does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301.

138.    "The decided weight of judicial authority and scholarly commentary supports [the] understanding . . . that agencies cannot promulgate substantive non-disclosure regulations." *Smith v. Cromer*, 159 F.3d 875, 890 (4th Cir. 1998); *see U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1255 (8th Cir. 1998) ("[S]ection 301 . . . expresses a clear congressional mandate that agencies cannot promulgate regulations exempting themselves from their duty to make information available to the public."). Thus, "*Touhy* regulations are only procedural, and do not create a substantive entitlement to withhold information." *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 62 (1st Cir. 2007).

139.    The Final Decision exceeds Defendants' statutory authority because Defendants purport to rely on reasons that have no basis in, or even a connection to, the eight enumerated "considerations" set forth in the Department's *Touhy* regulations. *See* 6 C.F.R. § 5.48(a).

140.    The Final Decision also exceeds Defendants' statutory authority because Defendants' interpretation of the Department's *Touhy* regulations functions as a de facto substantive non-disclosure policy.

141.    The Final Decision is therefore "in excess of statutory . . . authority" in violation of the APA. 5 U.S.C. § 706(2)(C).

142.    Defendants' violation causes ongoing harm to Plaintiff.

4847-3524-3434

## FOURTH CLAIM FOR RELIEF

### (Administrative Procedure Act – Not in Accordance with Law)

143.     Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

144.     Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A).

145.     The Final Decision is not in accordance with law because, contrary to Defendants' assertion, 6 C.F.R. § 5.43(a) authorizes Defendants to "receive and accept" the Requests.

146.     The Final Decision is also not in accordance with law because Defendants purport to rely on reasons that have no basis in, or even a connection to, the eight enumerated "considerations" set forth in the Department's *Touhy* regulations. *See* 6 C.F.R. § 5.48(a).

147.     The Final Decision is also not in accordance with law because Defendants' interpretation of the Department's *Touhy* regulations functions as a de facto substantive non-disclosure policy in violation of 5 U.S.C. § 301.

148.     The Final Decision is therefore "not in accordance with law" in violation of the APA. 5 U.S.C. § 706(2)(A).

149.     Defendants' violation causes ongoing harm to Plaintiff.

## FIFTH CLAIM FOR RELIEF

### (Administrative Procedure Act – Without Observance of Procedure Required by Law)

150.     Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

4847-3524-3434

151.    Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

152.    The Final Decision is without observance of procedure required by law because, contrary to Defendants' assertion, 6 C.F.R. § 5.43(a) authorizes Defendants to "receive and accept" the Requests.

153.    The Final Decision is also without observance of procedure required by law because Defendants purport to rely on reasons that have no basis in, or even a connection to, the eight enumerated "considerations" set forth in the Department's *Touhy* regulations. *See* 6 C.F.R. § 5.48(a).

154.    The Final Decision is therefore "without observance of procedure required by law" in violation of the APA. 5 U.S.C. § 706(2)(D).

155.    Defendants' violation causes ongoing harm to Plaintiff.

## V.    REQUEST FOR FEES AND EXPENSES PURSUANT TO 28 U.S.C. § 2412

156.    This is a civil action "for judicial review of agency action, brought . . . against the United States." 28 U.S.C. § 2412(d)(1)(A).

157.    The position of the United States is not substantially justified.

158.    Plaintiff therefore requests an award of fees and expenses pursuant to the Equal Access to Justice Act, codified at 28 U.S.C. § 2412.

## VI.    RESERVATION OF RIGHT TO SEEK INJUNCTIVE RELIEF

159.    Plaintiff reserves the right to seek preliminary or other injunctive or other equitable relief to enjoin Defendants from refusing to comply with the Requests and to order Defendants to

4847-3524-3434

authorize the Department to comply with the Requests if such relief is necessitated by developments in the Underlying Lawsuit or otherwise.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that this Court:

i.     Declare that the Final Decision is in excess of the Department's statutory jurisdiction, authority, or limitations, or short of statutory right within the meaning of 5 U.S.C. § 706(2)(C);

ii.    Declare that the Final Decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A);

iii.   Declare that the Final Decision is without observance of procedure required by law within the meaning of 5 U.S.C. § 706(2)(D);

iv.    Vacate and set aside the Final Decision;

v.     Enjoin Defendants, including the Department and all its officers, employees, and agents, and anyone acting in concert with them, from:

      a.   prohibiting or interfering with San Antonio's efforts to depose Johnson;

      b.   otherwise attempting to regulate the conduct of Johnson, a former employee, in connection with San Antonio's efforts to discover non-privileged information from Johnson; and

      c.   refusing to comply with the Requests;

vi.    Order Defendants to authorize the Department to comply with the Requests by:

      a.   responding to the Requests for Admission;

      b.   responding to the Interrogatories;

      c.   producing documents in response to the Requests for Production;

     d.  authorizing the deposition of Johnson as requested in the Request to Depose Johnson or as otherwise may be requested; and

     e.  authorizing the deposition of Folden as requested in the Request to Depose Folden; and

vii.     Grant other such relief as this Court may deem proper.


DATED: April 24, 2020.        Respectfully submitted,


SCOTT DOUGLASS & McCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
512.495.6300 Telephone
512.495.6399 Fax


By _____

Steve McConnico
State Bar No. 13450300
smcconnico@scottdoug.com
Kennon L. Wooten
State Bar No. 24046624
kwooten@scottdoug.com
William G. Cochran
State Bar No. 24092263
wcochran@scottdoug.com

ATTORNEYS FOR PLAINTIFF